WENDY OLSON, APPELLANT, V. PAUL S. SHERRERD, M.D., AND FAMILY EAR, NOSE AND THROAT CLINIC, P.C., APPELLEES.

663 N.W.2d 617

Filed June 27, 2003. No. S-02-185.

Daniel B. Cullan and Paul W. Madgett, of Cullan & Cullan Law, and Diana J. Vogt for appellant.

Mark E. Novotny and William R. Settles, of Lamson, Dugan & Murray, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Wendy Olson (Wendy) sued Paul S. Sherrerd, M.D., and the Family Ear, Nose and Throat Clinic, P.C. (the Clinic). She alleged that a medical assistant at the Clinic failed to meet the standard of care when she gave Wendy an injection of the steroid Aristocort. Following a trial, the jury found for Sherrerd and the Clinic. After the court denied Wendy's motion for a new trial, she appealed. Wendy claims that she is entitled to a new trial because the court erred in instructing the jury on causation, in overruling her motion for discovery sanctions, and in not allowing her to take the video-taped "trial" deposition of one of her treating physicians.

We conclude that Wendy failed to preserve her assignments of error addressing the causation instruction and her motion for discovery sanctions. Concerning the denial of the taking of the video-taped "trial" deposition, Wendy failed to show that the deposition would have been admissible at trial. Accordingly, we affirm.

## FACTUAL BACKGROUND

### INJECTION PROCEDURE

In the spring of 1993, Wendy saw her family physician, complaining of a sore throat. Wendy's family physician referred her to Sherrerd, who practices at the Clinic. Wendy went to the Clinic on June 4. Sherrerd determined that Wendy was suffering from allergies and decided to treat the symptoms with an injection of Aristocort. Wilburta Barton, a medical assistant who worked for the Clinic, gave the injection into Wendy's left deltoid muscle.

Wendy alleges that Barton failed to meet the standard of care in administering the injection. Specifically, she claims that Barton should have given the injection in Wendy's hip rather than her shoulder. Alternatively, Wendy argues that even if it was appropriate to give the injection in the shoulder, Barton breached the standard of care by giving the injection in the posterior of the shoulder. Wendy further contends that she was not informed about the dangers of receiving the injection in the shoulder and that the Clinic failed to ensure that Barton had received proper training.

Sherrerd and the Clinic contend that an Aristocort injection into the shoulder meets the applicable standard of care. They deny that Barton gave the injection into the posterior of the shoulder and argue that Barton was properly trained and that they warned Wendy about the dangers of injecting Aristocort into the shoulder.

### SUBSEQUENT DEVELOPMENTS WITH WENDY'S SHOULDER

Wendy claims that shortly after the injection, she developed pain in her shoulder and a dimple appeared in her shoulder. The dimple eventually filled in, but Wendy continued to have pain.

Eventually Wendy was referred to Mark Franco, M.D., an orthopedic surgeon. Franco examined Wendy in December 1994. He did not notice any major atrophy of her deltoid or any damage to her axillary nerve, a major nerve running through the upper arm. He did, however, diagnose Wendy as having adhesive capsulitis.

Adhesive capsulitis, also called frozen shoulder, is a shoulder condition characterized by pain and a marked decrease in the range of motion for the shoulder. There are several different causes for adhesive capsulitis. The most common cause is a painful stimulus which results in a period of immobilization of the

arm. Although Franco could not say for certain the cause of Wendy's adhesive capsulitis, he testified that the injection "would most likely be the painful stimulus."

Franco referred Wendy to R. Michael Gross, M.D., an orthopedic surgeon specializing in shoulder injuries. Although Gross did not testify, the court admitted his records into evidence. His records showed that he examined Wendy for the first time in March 1995. At this time, he wrote that he suspected the injection had aggravated the axillary nerve and that this led to a pattern of pain resulting in the adhesive capsulitis.

Initially, Wendy showed improvement while under Gross' care, but by June 1995, he had concluded that she was not making sufficient progress. He decided to perform closed manipulation on Wendy's shoulder. Closed manipulation involves putting the patient under anesthetic and physically moving the arm to break up the adhesive capsulitis. No incision is involved.

Gross performed the closed manipulation in July 1995. Wendy showed some improvement, but she was unable to sustain her recovery, so Gross decided to perform arthroscopic surgery. Following the surgery, Wendy again showed improvement, but by December 1995, the shoulder was again showing signs of adhesive capsulitis.

Gross continued to see Wendy until August 1997. During this time, Wendy's shoulder showed signs of improvement, but then subsequently regressed. At an appointment in August 1996, Gross noticed that Wendy had major deltoid atrophy. In his records, he noted, "This is something that I have never noticed before and clearly I noticed it in a heartbeat today which I am sure that I did not overlook that." The atrophy led Gross to conclude that the axillary nerve in Wendy's left shoulder had suffered significant damage, and later tests conducted by neurologists confirmed Gross' suspicion.

One of the neurologists who conducted tests on Wendy was Edward Schima, M.D. Initially, Schima believed that the injection at the Clinic had injured the axillary nerve. At trial, however, he testified that one of the surgeries performed by Gross had probably caused the nerve injury. When asked why he had changed his opinion, he stated that he had based his original opinion primarily on the oral history given to him by Wendy, but

after reviewing the medical records of Franco and Gross, he had changed his opinion.

Since 1996, Wendy has been to multiple physicians. She has never completely recovered from the nerve injury, and portions of her deltoid continue to show severe atrophy. Further, her right shoulder has also developed adhesive capsulitis. Wendy's experts testified that this resulted from her right shoulder's compensating for her left shoulder. Sherrerd and the Clinic, however, presented evidence that the adhesive capsulitis in her right shoulder was the result of an injury Wendy suffered while diving into a swimming pool.

## PROCEDURAL BACKGROUND

One week before trial, Wendy moved for a protective order. In the motion, she claimed that Mark Novotny, counsel for Sherrerd and the Clinic, had caused three of Wendy's treating physicians, Franco, Gross, and Schima, "to breach a confidential relationship between themselves and [Wendy]." Although the motion was labeled as one for a protective order, the motion was seeking discovery sanctions, and we will treat it as such. Specifically, Wendy requested that the court preclude Sherrerd and the Clinic from calling the three doctors as expert witnesses and limit their testimony to "the information contained in their medical records prior to said breach of [a] confidential relationship." She also asked the court to prohibit any further ex parte contacts by Sherrerd and the Clinic.

Before trial started, the court heard the pretrial motions filed by the parties, including Wendy's motion for a protective order. At the hearing, Wendy made oral motions in limine. Like her motion for a protective order, her motions in limine sought to prevent Franco, Gross, and Schima from testifying as experts for Sherrerd and the Clinic. In addition, she sought to limit their testimony to the information contained in their medical records before Novotny allegedly caused the physicians to breach their confidential relationships. The court denied the motion for a protective order and the motions in limine.

During her case in chief, Wendy called Franco and Schima. During cross-examination by Novotny, both testified that they did not believe that either Sherrerd or the Clinic had breached the standard of care in administering the injection. Schima also

testified that he did not believe that the injection caused the damage to the axillary nerve. At no time during the testimony of either Schima or Franco did Wendy's counsel object on the grounds raised in her motion for a protective order and motions in limine.

Wendy also planned to call Gross during her case in chief, but she did not subpoena him. On the second day of the trial, Wendy served Sherrerd and the Clinic with notice that she intended to take the videotaped "trial" deposition of Gross the next day. Sherrerd and the Clinic moved to quash the deposition.

At the hearing on the motion to quash, Sherrerd and the Clinic argued that the notice constituted unfair surprise. They also argued that under *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992), the deposition was inadmissible because Gross was not unavailable to testify at trial within the meaning of Neb. Rev. Stat. § 27-804(1) (Reissue 1995). Wendy's counsel did not explain why Gross was unavailable. The court quashed the deposition and told Wendy's counsel, "Get him here." Gross did not testify during trial.

After the jury returned a verdict for Sherrerd and the Clinic, Wendy moved for a new trial. The court overruled the motion, and Wendy appealed.

## ASSIGNMENTS OF ERROR
Wendy assigns, restated, that the court erred in (1) refusing to give her proposed jury instruction No. 14A; (2) failing to grant her motions for a protective order and in limine, limiting the testimony of Schima and Franco; (3) failing to allow her to take the deposition of Gross; and (4) denying her motion for a new trial.

## STANDARD OF REVIEW
■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hamilton v. Nestor*, 265 Neb. 757, 659 N.W.2d 321 (2003).

■ An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Farmers Mut. Ins. Co. v. Kment*, 265 Neb. 655, 658 N.W.2d 662 (2003).

## ANALYSIS

### JURY INSTRUCTION NO. 14A

Wendy claims that she is entitled to a new trial because the court erred in failing to give her proposed jury instruction No. 14A, which provided:

> If Defendants, Paul S. Sherrerd, M.D. and/or Family Ear, Nose, and Throat Clinic, P.C., is liable for Wendy['s] bodily injury, they are also subject to liability for any additional body [sic] harm resulting from the normal efforts of Dr. Michael Gross in rendering medical care and treatment which Wendy['s] injury reasonably required, irrespective of whether such medical care and treatment are done in a proper or a negligent manner.

However, because Wendy's counsel failed to object to the court's refusal to give this instruction at the jury instruction conference, we will not consider this assignment of error.

 To preserve an error related to the failure to give a proposed jury instruction, the party claiming error must object to the court's refusal to give the instruction at the jury instruction conference. *Farmers Mut. Ins. Co. v. Kment, supra.* In *Kment,* the appellants assigned as error the court's refusal to submit five of their proposed jury instructions. We refused to consider three of those instructions because, although the appellants submitted the three instructions to the court, they did not object at the jury instruction conference to the court's refusal to give them. *Id.* We stated:

> Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. . . . The submission of proposed instructions by counsel does not relieve the parties in an instruction conference from calling the court's attention by objection to any perceived omission or misstatement in the instructions given by the court. . . . The purpose of the instruction conference is to give the trial court an opportunity to correct any errors being made by it. Consequently, the parties should object to any errors of commission or omission.

(Citations omitted.) 265 Neb. at 659, 658 N.W.2d at 666-67. See, also, *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973).

Wendy submitted jury instruction No. 14A to the court, but at the jury instruction conference, she did not object to the court's refusal to submit the instruction. Instead, when the court asked her counsel if he had comments or objections concerning the court's proposed instructions, he responded, "I would — no, Your Honor. I think they are okay." As a result, Wendy failed to preserve her claim that the court erred in not giving her proposed jury instruction No. 14A.

### DISCOVERY SANCTIONS AND MOTIONS IN LIMINE

Wendy claims that Novotny engaged in inappropriate ex parte contacts with three of her treating physicians, Franco, Gross, and Schima. Before trial, she moved for discovery sanctions and filed two motions in limine, all three of which sought to limit the testimony of the three physicians. Wendy claims that she is entitled to a new trial because the court erred when it denied these motions.

We have not yet decided whether one party can, without permission, meet ex parte with an opposing party's treating physician. Nor need we do so because Wendy failed to preserve the issue for appellate review. A motion in limine is but a procedural step to prevent prejudicial evidence from reaching the jury. It is not the purpose of such a motion to obtain a final ruling upon the ultimate admissibility of the evidence. *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002). Rather, its purpose is to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to the jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. *Id.* Thus, when a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). This same rule applies when a trial court overrules a pretrial motion that seeks to exclude evidence as a sanction for discovery abuses. If the movant does

not object when the evidence is offered at trial, the issue is not preserved for appellate review.

Here, the motions in limine and the motion for discovery sanctions sought to preclude Franco, Gross, and Schima from testifying as experts and to limit their testimony to what they had stated in their medical records before Novotny had contacted them. At trial, only Franco and Schima testified. In fact, Wendy called them during her case in chief. Wendy did not object to the physicians' testifying as experts for Sherrerd and the Clinic, nor did she attempt to limit their testimony to what they had stated in their medical records before Novotny had contacted them. As a result, we will not consider whether the court committed error in refusing to limit the testimony of Franco and Schima.

### GROSS' "TRIAL" DEPOSITION

Finally, Wendy claims that she is entitled to a new trial because the court erred in quashing her proposed videotaped "trial" deposition of Gross.

A trial court has broad discretion to determine whether to allow a party to take the deposition of a nonparty during trial. Accordingly, we review the trial court's decision quashing the deposition of Gross for an abuse of discretion. Cf. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

The trial court did not abuse its discretion in refusing to allow Wendy to take the "trial" deposition of Gross. The sole purpose of the deposition was to present Gross' videotaped testimony to the jury instead of his live testimony. Wendy, however, failed to show that the deposition would have been admissible at trial. The deposition, as Wendy planned to use it, was hearsay. Wendy claims that Gross' deposition would have been admissible because he was unavailable to testify. See § 27-804(2)(a). But at the hearing on the motion to quash, Wendy did not show why Gross was

"unavailable" within the meaning of § 27-804(1). Instead, in response to the court's inquiry as to why the deposition was admissible, Wendy's counsel asserted that "[i]t may be that he's unavailable" for trial. Without a showing as to why Gross was unavailable to present live testimony, the court was under no obligation to allow Wendy to take his "trial" deposition. Cf. *Maresh v. State*, 241 Neb. at 507, 489 N.W.2d at 308 ("burden to establish the declarant's unavailability is on the party seeking to introduce evidence, pursuant to § 27-804").

## CONCLUSION

Wendy did not preserve her assignments of error addressing the court's failure to give proposed jury instruction No. 14A and the court's refusal to sanction Sherrerd and the Clinic for discovery abuses. Further, the court did not abuse its discretion when it refused to allow Wendy to take the deposition of Gross during trial. As a result, the court did not abuse its discretion in denying Wendy's motion for a new trial.

AFFIRMED.