JAMES R. SMITH, APPELLANT, v. COLORADO ORGAN
RECOVERY SYSTEM, INC., ET AL., APPELLEES.

694 N.W.2d 610

Filed April 1, 2005.   No. S-02-767.

Edward F. Fogarty, of Fogarty, Lund & Gross, and Marc Humphrey, of Humphrey Law Firm, for appellant.

John A. Svoboda, of Gross & Welch, P.C., for appellee Nebraska Organ Retrieval System, Inc.

Michael F. Kinney and Martin V. Klein, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Dr. Everett Spees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## BACKGROUND

In 1994, James R. Smith, the plaintiff, was living in Omaha, Nebraska, and awaiting a liver transplant operation. A donor liver became available from a gunshot victim in Denver, Colorado. The donor liver was recovered from the donor at Denver General Hospital by Dr. Everett Spees, medical director for Colorado Organ Recovery System, Inc. (CORS).

When a liver is recovered, it is flushed twice while still in the donor's body, and then again after removal, before it is placed in a preservative solution for transport. There are two different solutions that may be used for flushing and preservation. "Euro-Collins" solution (EC) can be used, but the transplant should then occur within 6 hours. University of Wisconsin solution (UW) was invented after EC and allows for a longer period of preservation prior to transplant.

In this instance, concerned about a shortage of UW, Spees performed the initial flush of the donor liver with EC, and the second

flush was performed with UW. The liver was removed from the donor, flushed again with UW, and placed in UW for transport. These procedures were described in the donor information records that accompanied the liver for transport.

The liver was transported by CORS to a Denver airport and flown to Omaha. The liver was picked up from an Omaha airport by an employee of Nebraska Organ Retrieval System, Inc. (NORS). He transported the liver from the Omaha airport to the University of Nebraska Medical Center (UNMC), where it was transplanted into Smith. Neither the employee nor UNMC reviewed the donor information records prior to the transplant operation.

After a transplant was performed on Smith by Dr. Byers Shaw, the liver failed to function, and Smith was supported by extracorporeal porcine and cadaver livers until another donor liver became available. Smith received a second, functional liver approximately a week later, but allegedly suffered health problems as a result of the first transplant surgery.

Smith sued, inter alia, Spees, CORS, and NORS. Smith alleged that Spees and CORS had been negligent in flushing the liver with EC and in failing to specifically notify NORS that EC had been used. Smith alleged that NORS had been negligent in not reviewing the donor information records and notifying UNMC that EC had been used.

Prior to trial, the district court sustained NORS' motion for summary judgment. The court determined that there was no evidence establishing a duty on the part of NORS to review the donor information records.

The case proceeded to a jury trial on Smith's claims against Spees and CORS. The jury found that Spees and CORS had been negligent; however, the jury also found, pursuant to a special verdict form, that the use of EC was not a proximate cause of Smith's damages. The jury specifically found that the use of EC as an initial in situ flush solution was not a proximate cause of the failure of Smith's donor liver. Pursuant to the jury verdict, the district court entered a judgment for the defendants. Smith appeals.

## ASSIGNMENTS OF ERROR

Smith assigns the following errors, as consolidated, reordered, and restated:

(1) The court erred in (a) overruling Smith's pretrial *Daubert* objections to the defendants' expert witnesses; (b) denying Smith's posttrial motion for sanctions and fees, based on the defendants' expert witnesses' use of "junk science," brief for appellant at 38; and (c) excluding testimony regarding proximate cause from Dr. John Dunn, one of Smith's expert witnesses.

(2) The court erred in excluding the following evidence: (a) a CORS staff conference record, made after Smith's transplant, directing employees to warn recipient transplant centers of changes in flush protocol; (b) evidence that CORS waived the $19,000 charge for the donor liver; (c) Shaw's statement to the donor team asking if UNMC was the donor team's "guinea pigs"; (d) a statement of a UNMC surgeon that an EC flush was "remarkably unexpected"; (e) testimony that the failure rate of UNMC liver transplant operations had been reduced to 2 percent at the time of Smith's operation; and (f) corroboration of a statement by Shaw that had he known of the EC flush, he would not have used the liver.

(3) The court erred in (a) refusing to give the jury a multiple-cause instruction relating to other possible causes for failure of the donor liver and (b) submitting a special interrogatory to the jury asking "if EC was a proximate cause" of the liver failure.

(4) The court erred in (a) determining that NORS had no duty to review the donor information records and (b) having concluded that NORS had no duty to review the donor information records, refusing to instruct the jury to that effect.

(5) The court erred in refusing to instruct the jury as a matter of law that (a) the standard of care required Spees and CORS to give actual notice to NORS of the use of EC and (b) proximate cause had been established.

## STANDARD OF REVIEW

In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any

competent evidence is presented to the jury upon which it could find for the successful party. *Fales v. Norine*, 263 Neb. 932, 644 N.W.2d 513 (2002).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

■ In proceedings where the Nebraska rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004). Generally, a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id.*

■ Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

## ANALYSIS

### JURISDICTION

■ We first note Spees' argument that this case should be dismissed for lack of appellate jurisdiction. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Weeder v. Central Comm. College, ante* p. 114, 691 N.W.2d 508 (2005). Spees contends that CORS has been released from this case pursuant to a high-low settlement agreement and that since Spees' alleged negligence occurred within the scope of his employment, he was an agent of CORS, and the release of his principal also released him from liability. Thus, Spees argues that with respect to him, the case is moot and should be dismissed.

■ As a general rule, a moot case is subject to summary dismissal. *Krajicek v. Gale*, 267 Neb. 623, 677 N.W.2d 488

(2004). However, dismissal of this entire appeal would be improper, as Smith also takes issue with the court's partial summary judgment in favor of NORS. Moreover, as will be made clear below, the issues presented in Smith's appeal are intertwined, and disposing of his arguments with respect to NORS requires us to first dispose of his arguments with respect to Spees and CORS—their alleged negligence is essential to analyzing the chain of causation in which NORS' negligence was, allegedly, a link. A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *In re Estate of Jeffrey B., supra.* Since we must consider Smith's arguments with respect to Spees and CORS regardless of any settlement agreement, the issues presented by Smith's appeal are not moot.

## PROXIMATE CAUSE

The primary issue in this appeal is causation. The jury specifically found that the negligence of Spees and CORS was not a proximate cause of the injuries and damages to Smith and that the use of EC as an initial in situ flush in this case was not a proximate cause of the failure of the donor liver.

A proximate cause is a cause that produces a result in a natural and continuous sequence *and* without which the result would not have occurred. *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004). A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster. *Id.*

Stated simply, Smith's theory of proximate cause in this case was that Spees' allegedly negligent use of EC as an initial in situ flush rendered the donor liver unsuitable for transplant, because the initial EC flush resulted in the liver's not being adequately preserved. Smith alleged that the use of EC caused the liver to fail and that CORS' and NORS' subsequent failure to notify the transplant team of the use of EC prevented the transplant team from making an informed decision to reject the tainted liver.

But it is important to note that although Smith alleged several parties were negligent, the natural and continuous sequence of

causation he set out to prove began with the use of EC as an initial in situ flush and that this event was found, by the jury, not to be a proximate cause of the failure of the donor liver. In other words, the jury found that something other than the use of EC caused the liver to fail. Implicit in this finding is that, according to the jury, the donor liver would have failed regardless of the use of EC.

Consequently, our analysis of Smith's assignments of error begins with those arguments which are directed at the jury's finding that the EC flush did not cause the donor liver to fail. In other words, we must first determine if any error on the part of the court undermines the jury's finding. Then, if the jury's special finding on causation was not the result of error, we must determine which of Smith's remaining assignments of error would remain prejudicial, when the effect of the jury's findings on causation is considered.

## EXPERT TESTIMONY

Smith argues that the court erred in overruling his pretrial objections to the defendants' expert witnesses. This argument is pertinent because the jury's findings on proximate cause were based on the expert testimony presented by the defendants.

An expert's opinion is ordinarily admissible under Neb. Rev. Stat. § 27-702 (Reissue 1995) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004). When the opinion involves scientific or specialized knowledge, this court held in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), that we will apply the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Under our recent *Daubert/Schafersman* jurisprudence, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. *Robb v. Robb, supra.* This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology can be applied to the facts in issue. *Id.* In addition, the trial court must

determine if the witness has applied the methodology in a reliable manner. *Id.*

In this case, the defendants presented expert testimony from Drs. Steven Strasberg, James Southard, and Goran Klintmalm. Strasberg, a liver surgeon, was a professor of surgery and head of hepatobiliary-pancreatic surgery at Barnes-Jewish Hospital and Washington University. Strasberg had been researching preservation of the liver since 1985; of his approximately 150 peer-reviewed journal publications, 40 dealt with liver transplantation and 35 of those were specifically in the area of preservation injury. Strasberg had done approximately 500 donor liver retrieval operations and performed about 100 liver transplants.

Based on his review of the relevant medical literature, Strasberg testified to a reasonable degree of medical certainty that in his opinion, the use of EC in Smith's transplant did not increase the chance of that particular liver failure. Instead, Strasberg opined to a reasonable degree of medical certainty that Smith's donor liver failed because of three risk factors: (1) pre-preservation injury to the liver resulting from hypoxia, as well as cocaine and alcohol use by the donor; (2) prolonged preservation time; and (3) the length of time between removal of the liver from cold storage and restored circulation of blood.

Southard, who holds a doctorate degree, is the codeveloper and patent holder for UW. Southard was a professor and vice chairman of the department of surgery at the University of Wisconsin. Southard was the author of approximately 220 journal articles, of which 190 to 200 addressed organ preservation—specifically, the mechanisms by which cells and organs are injured by cold and how to develop new preservation methods and solutions. Southard had also authored approximately 30 book chapters on organ preservation. Southard opined, to a reasonable degree of scientific certainty, that the use of EC did not increase the risk of injury to the donor liver in Smith's case and did not cause or contribute to the failure of the donor liver.

Klintmalm was chairman of Baylor transplant sciences, director of the Dallas liver transplant program, and director of transplantation services at Baylor University Medical Center. Klintmalm had authored about 239 articles in peer-reviewed journals, 95 percent of which were focused on transplantation.

Klintmalm was the surgeon for about 40 percent of the 110 to 160 transplants performed annually by Baylor University. Klintmalm was also the author of a controlled study of human livers in which one group was flushed with EC and preserved in UW, and the other group was both flushed and preserved in UW. Klintmalm testified that the study concluded that "[a]ll livers, regardless of preservation or flush, worked equally well." Based on his experience, Klintmalm testified to a reasonable degree of medical certainty that the use of EC in Smith's case had "absolutely no impact on the outcome" and did not contribute to or increase the risk for failure of the liver.

Smith argues that the opinions of Strasberg, Southard, and Klintmalm should have been excluded on *Daubert/Schafersman* grounds. However, the record shows that Smith failed to preserve this argument for appeal. Smith filed a pretrial motion in limine to the defendants' expert witnesses' testimony, based on their deposition testimony, that was overruled by the district court. At trial, however, no foundational objection, based upon *Daubert/Schafersman* or otherwise, was made to the opinions of Strasberg, Southard, or Klintmalm. At the close of the evidence, Smith did make a motion to strike expert testimony, but even then, he sought to strike their testimony specifically with respect to duty and the standard of care, not causation. Finally, Smith's motion for new trial was based, in part, on the court's overruling of Smith's pretrial motion in limine.

But the overruling of a motion in limine is not reviewable on appeal. *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001). When a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal. *Olson v. Sherrerd*, 266 Neb. 207, 663 N.W.2d 617 (2003). By failing to object during trial to any of the expert opinion testimony now challenged on appeal, Smith waived his *Daubert/Schafersman* argument. Similarly, the court did not abuse its discretion in overruling Smith's motion for new trial; it is not an abuse of discretion to overrule a motion for new trial that is based on errors alleged to have occurred during trial, but to which no timely

objection was made. See *Mooney v. Gordon Memorial Hosp. Dist.*, 268 Neb. 273, 682 N.W.2d 253 (2004).

We also note that in any event, Smith's appellate argument appears to be directed at the credibility of the defense witnesses, and not to any specifically identified flaw in their reasoning or methodology. Simply stated, Smith's brief accuses all three defense experts of lying. While Smith's expert witnesses reached conclusions different from those of Strasberg, Southard, and Klintmalm, Smith's witnesses did not testify that the defense witnesses' methodology was scientifically invalid. In other words, even if preserved for appellate review, Smith's argument is less a *Daubert/Schafersman* claim than an unsubstantiated attack on the credibility of the defense witnesses.

Smith also claims that he should have been awarded sanctions and fees based on the defendants' use of "junk science" from their expert witnesses. Brief for appellant at 38. Obviously, given our disposition of Smith's argument with respect to that testimony, his claim for sanctions and fees is without merit.

Finally, Smith argues that the court abused its discretion in excluding the testimony of Dr. John Dunn with respect to causation. Dunn was a risk management expert and board certified in emergency medicine, but had "[v]ery little" experience in the field of organ transplants. In his deposition, Dunn specifically testified that he was *not* scientifically qualified to offer an expert opinion on the cause of Smith's donor liver failure. Dunn stated that he was not an expert on EC or UW and would not, if he were the judge, allow himself to testify as to whether the use of EC had a deleterious impact on Smith's donor liver. Given these admissions, the court did not abuse its discretion in concluding Dunn was not qualified to testify on causation.

In short, Smith waived any objection to the defendants' expert testimony, and the court did not abuse its discretion in excluding Dunn's expert testimony on the cause of the failure of Smith's donor liver. Smith's *Daubert/Schafersman* arguments do not undermine the jury's special finding on proximate cause.

## EVIDENTIARY RULINGS

Smith complains of several rulings excluding evidence. It is not entirely clear how each of these rulings bears on the issue of causation, although Smith argues that the evidence he claims was

erroneously excluded would have helped build the "chain of causation" and the exclusion was prejudicial. As we conclude that the court did not err in excluding this evidence, we assume without deciding that Smith's alleged errors would have affected the jury's determination on causation.

Smith first complains of the exclusion of a record of a CORS staff conference, held after the recovery of Smith's donor liver, directing employees to notify transplant centers if different flush solutions were used. This evidence was excluded pursuant to Neb. Rev. Stat. § 27-407 (Reissue 1995), which provides in relevant part:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The court did not err in concluding that the evidence at issue was barred by § 27-407. The direction given to CORS employees is clearly a subsequent remedial measure, and Smith does not argue otherwise. Smith's offer of proof at trial did not establish that the evidence was proffered for any of the permissible purposes set forth in § 27-407. Instead, Smith's appellate brief simply contends that the evidence was *relevant*, which is unresponsive to the objection made and sustained by the court. We find no error in the court's evidentiary ruling.

Smith next asserts the court erred in excluding evidence that CORS offered not to charge NORS and UNMC for the donor liver, that Shaw accused the donor hospital of using UNMC as "guinea pigs," and of corroboration of a statement made by Shaw that had he known of the EC flush, he would not have transplanted Smith's donor liver. This evidence was excluded as hearsay, and Smith does not offer an appellate argument responsive to the court's ruling. Instead, Smith's brief simply argues that the evidence was relevant and that its exclusion was prejudicial. Because Smith does not contest the court's conclusion that the evidence was hearsay, and hearsay is inadmissible, see Neb. Rev.

Stat. § 27-802 (Reissue 1995), Smith has identified no error in the court's rulings.

Smith also assigns that the court erred in "excluding UNMC assistant transplant surgeon Dr. [Rakesh] Sindhi's deposition testimony to the effect UW only was all he'd ever seen and this EC flush was remarkably unexpected." However, Smith's brief does not identify where, in the record, this evidence is to be found. It is not the function of an appellate court to scour the record looking for unidentified evidentiary errors. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004). Neb. Ct. R. of Prac. 9D(1)f and g (rev. 2001) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or argument section of a brief. The failure to do so may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist. *First Westside Bank v. For-Med, Inc.*, 247 Neb. 641, 529 N.W.2d 66 (1995). We have, however, thoroughly examined the record and are unable to discern to what Smith is referring. Consequently, we are unable to conclude that the court committed prejudicial error.

Finally, Smith claims the court erred in excluding testimony that by 1994, the failure rate for liver transplants at UNMC had been reduced to 2 percent. The evidence was excluded as being beyond the scope of pretrial disclosure. But, as with his other arguments, Smith merely contends that the exclusion of this evidence was prejudicial. He does not explain how the court's ruling was erroneous. Consequently, we find no error.

### MULTIPLE-CAUSE INSTRUCTION

Smith argues that the court erred in refusing to give his proposed jury instructions on multiple causes. Obviously, if the jury was not correctly instructed on causation, this would undermine its special finding on that issue. However, we conclude that the proffered instruction was not warranted by the evidence.

Smith's proposed instructions, summarized generally, would have instructed the jury that the defendants' negligence could still be a proximate cause of Smith's damages, even if other risk factors contributed to the failure of the liver. In essence, Smith was requesting a hybrid "substantial factor" type of instruction. Under

certain circumstances, when multiple causes act to produce a single injury or when the active negligence of a third person is also a substantial factor in bringing about the harm, the standard proximate cause instruction may be insufficient. See *Reimer v. Surgical Servs. of the Great Plains*, 258 Neb. 671, 605 N.W.2d 777 (2000). Under such circumstances, an instruction that a defendant's conduct is a cause of an event if it was a substantial factor in bringing it about is appropriate. *Id.* The " 'substantial-factor rule' " was developed primarily for cases in which application of the "but for" rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result. *Id.* at 677, 605 N.W.2d at 781.

However, an instruction based on the "substantial-factor rule" was not warranted in this case. To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

In this case, Smith did not contend that in the absence of the initial EC flush, the donor liver would have failed. In fact, Smith contends the opposite. This is simply not a case in which liability could never be established under the standard proximate cause instruction; therefore, a "substantial factor" instruction was unwarranted. Compare *Reimer v. Surgical Servs. of the Great Plains, supra*. Nor did Smith contend that this was a case in which the jury would be unable to establish to what degree the plaintiff's damages were caused by the negligence of the defendants. Compare *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

Instead, Smith's theory of the case was that the use of EC caused Smith's donor liver to fail; in fact, Smith's proposed instruction would still have instructed the jury to that effect. But the jury was correctly instructed on proximate causation and that liability would attach if *either* Spees *or* CORS was *a* proximate cause of some damage to Smith. The jury was also properly instructed that

> [w]here the independent negligence [sic] acts or failures to act of more than one person combine to proximately cause the same single indivisible injury and damage, each such act or failure to act is a proximate cause, and each such person and/or corporation may be held responsible for the entire injury and damage. This is true although some may have been more negligent than others.

These instructions on proximate and concurring causation were a correct statement of the law and consistent with the evidence presented at trial. Smith's proposed instructions, including language taken from the "substantial-factor rule," were not warranted by the evidence.

Smith also assigned that the court erred in submitting a special interrogatory to the jury asking "if EC was a proximate cause" of Smith's donor liver failure. Smith did not argue in what way the court abused its discretion by submitting the special interrogatory to the jury or how Smith was prejudiced by the submission of the special interrogatory. Errors that are assigned but not argued are not typically addressed by this court, and we have no basis to do so here. See *Livingston v. Metropolitan Util. Dist., ante* p. 301, 692 N.W.2d 475 (2005).

### EFFECT OF SPECIAL FINDING ON PROXIMATE CAUSE

Smith presents several arguments with respect to the alleged negligence of NORS, and the court's summary judgment in NORS' favor. We conclude, however, that these arguments do not undermine the jury's special finding on causation, and we further conclude that the jury's conclusion that the use of EC was not a proximate cause of the failure of the donor liver is dispositive of Smith's claim against NORS.

As previously stated, a cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster. *Sweeney v. Kerstens & Lee, Inc.,* 268 Neb. 752, 688 N.W.2d 350 (2004). Smith contends that NORS had a duty to review the paperwork accompanying the donor liver and to inform the UNMC transplant team that EC had been used. Smith argues that because Shaw was reported to have said that he would not have used the liver had he known of

the EC flush, "but for" NORS' alleged negligence, Smith's failed transplant would not have occurred.

However, a proximate cause is a cause that produces a result in a natural and continuous sequence *and* without which the result would not have occurred. *Id.* Even if NORS was negligent, and even if Smith's injury would not have occurred "but for" NORS' negligence, this does not establish that NORS' alleged negligence caused Smith's injury in a natural and continuous sequence. At best, NORS would have been a link in the "chain of causation" between the use of EC and the failure of Smith's donor liver.

Smith contends that the absence of NORS at trial allowed the jury to conclude that "the chain of cause broke at its weakest link." Brief for appellant 29. But the jury found that chain of causation never to have been initiated. The jury's special finding was not simply that the use of EC was not a proximate cause of Smith's damages—rather, the jury specifically found that the use of EC *did not cause Smith's donor liver to fail.* In other words, the jury found that even had EC not been used, the result of Smith's transplant surgery would have been the same. Since the jury found that the liver failure was not caused by the use of EC, it would have been impossible for the same jury to find that the liver failure was caused by NORS' failure to warn UNMC of the same use of EC.

Consequently, any error in granting summary judgment for NORS was harmless, because any negligence on NORS' part was not a proximate cause of Smith's damages. Smith was not prejudiced by the "empty chair" at trial, as the jury's special finding on proximate cause was equally applicable to Spees, CORS, and NORS.

Similarly, Smith argues that the jury should have been instructed that Spees and CORS were negligent as a matter of law in failing to ensure that UNMC was notified of the use of EC. Smith's reasoning here is substantially the same as that reasoning he advanced with respect to NORS—he argues that since Shaw would not have used the donor liver had he known of the EC flush, the failure to notify UNMC establishes "but for" causation of Smith's damages. But, as above, if the EC flush did not cause Smith's donor liver to fail, then the failure to notify the

transplant team of the EC flush could not have been a cause of Smith's injuries.

In short, CORS, Spees, and NORS were not the legal cause of Smith's injuries. While it is true that several events preceded the unfortunate failure of Smith's donor liver, the jury determined that the conduct of CORS, Spees, and NORS did not act in a natural and continuous sequence to produce such injuries. That is because, according to the jury, the use of EC simply did not cause Smith's donor liver to fail.

■ Therefore, we decline to consider Smith's remaining arguments, because even if the court had committed error with respect to NORS', CORS', or Spees' failure to inform UNMC of the use of EC, such error would not be prejudicial and would not affect our disposition of this appeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Livingston v. Metropolitan Util. Dist., ante* p. 301, 692 N.W.2d 475 (2005).

## CONCLUSION

Smith has not shown that the jury's special finding on proximate cause—that the use of EC was not a proximate cause of the failure of Smith's donor liver—was the result of any error on the part of the court. Since the use of EC was not a proximate cause of Smith's donor liver failure, the actions of the defendants were not a proximate cause of Smith's injuries, and judgment was properly entered for the defendants. The judgment of the district court is affirmed.

AFFIRMED.

STEPHAN, J., not participating.