IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

CRUMBLISS V. CRUMBLISS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBERT W. CRUMBLISS, APPELLANT,
V.
TIFFANY D. CRUMBLISS, APPELLEE.

Filed July 16, 2013.    No. A-12-822.

Appeal from the District Court for Saline County: VICKY L. JOHNSON, Judge. Affirmed.

Joseph H. Murray, P.C., L.L.O., of Germer, Murray & Johnson, for appellant.

Shaylene M. Smith, of Kalkwarf & Smith Law Offices, L.L.C., for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Robert W. Crumbliss appeals the portion of the district court's decree dissolving his marriage to Tiffany D. Crumbliss in which the court awarded physical custody of the parties' four minor children to Tiffany. On appeal, Robert argues that the court erred in finding that the children's best interests would be served by awarding Tiffany physical custody. We find that the district court thoroughly considered all relevant factors, provided a thorough and well-reasoned decree, and did not abuse its discretion in awarding physical custody to Tiffany. We affirm.

## II. BACKGROUND

### 1. FACTUAL BACKGROUND AND TRIAL TESTIMONY

Robert and Tiffany were married in 1995 and lived in Friend, Nebraska. The parties had four children, all born between 2000 and 2010. During the marriage, the parties jointly agreed that Tiffany would stay home with the children instead of working outside of the home.

On September 21, 2011, Robert filed a complaint seeking dissolution of the parties' marriage. In the complaint, Robert requested custody of the children. Trial was held in July

- 1 -

2012, at which time the primary issue being contested was custody of the children. The parties agreed that joint legal custody was appropriate, but disputed who should be awarded physical custody.

Trial was held over two different dates, during which the parties presented what amounted to approximately 400 pages of testimony from 15 witnesses. Throughout that testimony, evidence was adduced demonstrating that both parents are fit and proper, and each party presented evidence highlighting particular incidents or examples of flaw in each other's parenting.

Robert testified that throughout the marriage, he was employed teaching college in Hastings, Nebraska, and working for his father on the family farm. At one point, he had attempted a business venture, but it failed and he returned to teaching. He testified that his job teaching would coincide with the school schedules for the children and that during the summer, he would work on the family farm with flexible hours. He testified that the children are used to spending time on the farm.

Robert testified that Tiffany had stayed home with the children throughout the marriage. He testified, however, that he had been involved and helped with them when he was home, including helping with cooking and cleaning. He also testified that he was involved with the children's activities throughout the marriage, including coaching sports teams and participating in carpools for activities.

At the time of trial, Robert was living in a house in Fairfield, Nebraska. He testified that the house had five bedrooms and three bathrooms and that the children had all spent time in the house prior to the dissolution trial. He testified that there are neighborhood friends who the children visit and play with when they are at his house and that some of the children's friends from Friend have also gone to Fairfield and stayed with Robert and the children.

Robert presented evidence about the school the children would be enrolled in if he was awarded physical custody. With respect to the three older children, he testified that they would attend Sandy Creek school, in a combination elementary and middle school. He testified that the children were familiar with the school and had attended events and activities there, that their cousins had attended school there, and that the children's aunt works at the school. He also testified that the children had friends who would attend the school, whom the children had met at swimming lessons, at Bible school, at church, and through the community.

Robert testified that the Sandy Creek school and the community would offer a variety of extracurricular activities for the children. He testified to a variety of sporting opportunities, as well as band and choir.

Robert also testified that he had made arrangements for before and after school care, as well as daycare for the youngest child, who was only approximately 2 years old at the time of trial. Robert's mother was available to be with the children during the short period of time between when he needed to leave for work and when they needed to leave for school in the morning, as well as after school. He had made arrangements for the youngest child to be enrolled in a daycare in Clay Center, Nebraska, which would be on his way to and from teaching in Hastings.

Robert testified that he felt that Tiffany was very strict with the children and was very hard on them. He testified that she had exhibited a volatile temper with the children and had been contentious with them.

Robert testified about three or four specific incidents involving Tiffany and the children during the marriage, although we do not find it necessary to discuss them in particular detail. The incidents primarily involved incidents of tension between Tiffany and the parties' oldest child, a preteenage daughter. In addition to the three or four specific incidents, Robert also testified that between 2009 and 2012, he received "multiple" phone calls from the oldest child when she was "scared" and "fighting" with Tiffany.

At the time of trial, Tiffany was still residing in the parties' marital home in Friend, along with the children. She testified, however, that her intention was to move to Crete, Nebraska. The parties' marital home was on the market for sale, pursuant to a joint property agreement. She testified that she had spoken to "several people that own rental properties," but had not been able to make a financial commitment pending the dissolution of the marriage.

Tiffany testified similarly to Robert concerning the joint decision for her to stay home with the children during the marriage. She testified that as a result of her staying home with the children, she was the one who primarily took them to doctor visits and prepared them for school on a daily basis. She testified that she spent a great deal of time simply "managing" all of their schedules.

At the time of the dissolution of marriage trial, Tiffany was employed at a daycare center in Crete. She testified that her work schedule was flexible as needed to accommodate the children's schedules. She also presented testimony from the daycare's owner, who confirmed the flexibility of Tiffany's schedule and testified that the center had long-term plans for Tiffany to take over the daycare's preschool.

Tiffany testified that if she was awarded physical custody, the children's schedules and routines for school would be similar to what they had always been. She testified about the schools in Crete, as well as the availability of extracurricular activities. She testified about a variety of sports activities and indicated that the oldest daughter would be able to continue dance at the same studio she has always danced at.

Tiffany testified that she was better able to provide consistent structure for the children, as she had provided it as the stay-at-home parent throughout the marriage. She testified that she had been able to maintain consistency for the children during the temporary period, even without Robert in the home. Tiffany expressed some concern about Robert's ability to provide structure and consistency, rather than relying too heavily on his family to help parent the children.

On cross-examination, Tiffany testified about the specific incidents that Robert had testified about involving her and the children, primarily the oldest child. She did not recall each of the incidents, and she acknowledged that the other incidents had occurred, although not precisely in the same manner as Robert's testimony had suggested.

Tiffany testified that the parties' oldest child, the preteenage daughter, had a tendency to be stubborn, just like Tiffany herself. She testified that the two had a typical mother-daughter relationship and that the two "butt heads" sometimes. She described her relationship with the child as close.

## 2. DISSOLUTION DECREE

In September 2012, the district court entered its decree dissolving the parties' marriage and resolving the physical custody issue. The decree includes several pages of discussion about the physical custody issue, in which the court recounted the testimony adduced at trial and specifically considered a number of relevant factors and considerations. The court found both Tiffany and Robert to be fit and proper to have physical custody, but ultimately concluded that the children's best interests would be served by awarding physical custody to Tiffany.

The court noted that during the marriage, Tiffany had stayed at home with the children, while Robert had been the primary wage earner. The court noted that Tiffany had been the primary caregiver prior to the parties' separation, although Robert had participated as his work allowed. The court noted that since the parties' separation, Tiffany had physical custody and the longest period of time that all four children had been with Robert together had been only 1 week to 10 days.

The court recognized the "normal adolescent parent/child conflict" between Tiffany and the parties' oldest child, but concluded that the evidence did not demonstrate any effect on her ability to parent. The court also recognized that Robert and Tiffany had different approaches to parenting, with Tiffany being more structured and strict. The court recognized that the evidence demonstrated some character flaws in both Robert and Tiffany, but that "none of their imperfections are of significance." The court concluded that the parties' minor character flaws were generally balanced and did not weigh in favor of either party.

The court specifically recognized the new living arrangements that would be enjoyed by Robert and Tiffany, Tiffany's new employment, the new school environments that each would provide for the children, and the extracurricular activities available to the children in each party's new location. The court concluded that those factors were balanced and did not weigh in favor of either party.

The court ultimately concluded that "there are very few factors of significance to weigh in making [the physical custody] decision." The court weighed continuing physical custody with Tiffany as "the most significant factor" and noted that it would "result in the most consistency and continuity for the children."

This appeal followed.

## III. ASSIGNMENT OF ERROR

Robert's only assignment of error on appeal is that the district court erred in awarding physical custody of the parties' minor children to Tiffany.

## IV. ANALYSIS

Robert asserts that the district court erred in awarding physical custody of the parties' minor children to Tiffany. Upon our review of the evidence, we find that there was evidence to support the court's determination both parties were fit and proper to have physical custody and that the court did not abuse its discretion in awarding physical custody to Tiffany.

Child custody determinations are initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Wild v. Wild*, 15 Neb. App. 717, 737 N.W.2d 882 (2007).

A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

When custody of minor children is an issue in a proceeding to dissolve the marriage of the children's parents, child custody is determined by parental fitness and the children's best interests. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012). In this case, the court found that both parties are fit and proper to have custody and determined that joint legal custody of the children was in their best interests. Neither party disputes these conclusions. Thus, the focus of this appeal is on the best interests of the children with regard to physical custody.

Neb. Rev. Stat. § 43-2923(6) (Cum. Supp. 2012) provides that in determining custody and parenting arrangements:

> [T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :
>
> > (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
> >
> > (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; [and]
> >
> > (c) The general health, welfare, and social behavior of the minor child.

See *Pohlmann v. Pohlmann, supra*. In addition to these factors, the Nebraska Supreme Court has previously held that in determining a child's best interests, courts

> "'may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child.'"

*Davidson v. Davidson*, 254 Neb. 357, 368, 576 N.W.2d 779, 785 (1998).

The present case is, in essence, one where the parties have presented conflicting evidence concerning the best interests of the children. Both were found to be fit and proper, and the record reflects that both were capable of providing a safe and appropriate environment for the children. As set forth in more detail above in the factual background portion of this opinion, the parties simply provided conflicting evidence concerning their parenting strengths and weaknesses and about which would better serve the children's interests as physical custodian. That evidence did not demonstrate that either would have been inappropriate or unfit to receive physical custody.

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann, supra*. In fact, in contested custody cases, where material issues of fact are in dispute, the standard of review

and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Id.*

In this case, there was sufficient evidence to support the court's custody determination. It would unduly lengthen this opinion and add little to our jurisprudence to detail the evidence concerning each party's parental strengths and parental shortcomings beyond what is set forth in the factual background above. See *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013). It is sufficient to say the evidence showed that most of the considerations for determining best interests in this case weighed relatively equally in favor of both parties, that Tiffany had been the children's primary caretaker during the marriage, and that neither party presented an inappropriate environment for the children. Given all of the evidence, our standard of review, and deference to the trial court's observation of the witnesses, we cannot say that the court's decision to award physical custody to Tiffany was clearly untenable or an abuse of discretion.

## V. CONCLUSION

We find no abuse of discretion in the court's award of physical custody to Tiffany. We affirm.

AFFIRMED.