Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/28/2017 09:13 AM CST

Scott Berndt, appellee, v. Tonya Berndt, now known as
Tonya DiPasquale-Martinez, appellant.

___ N.W.2d ___

Filed November 14, 2017.    No. A-16-1109.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.

2. **Divorce: Modification of Decree: Visitation.** Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children.

3. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

4. **Visitation.** The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child.

5. ____. The best interests of the children are primary and paramount considerations in determining and modifying visitation rights.

6. **Modification of Decree: Child Custody: Proof.** In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

7. **Child Custody.** While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.

8. **Modification of Decree: Child Custody: Appeal and Error.** In a child custody modification case, an appellate court, in its de novo review, can make a best interests of the child finding if the evidence supports it.

9. **Child Custody.** In determining the best interests of a child in a custody determination, a court must consider pertinent factors, such as the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child.

Appeal from the District Court for Sheridan County: TRAVIS P. O'GORMAN, Judge. Reversed and remanded with directions.

Desirae M. Solomon for appellant.

Bell Island, of Island Law Office, P.C., L.L.O., for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Tonya Berndt, now known as Tonya DiPasquale-Martinez, appeals from an order of the district court for Sheridan County denying her complaint to modify visitation with her children. Based on the reasons that follow, we reverse, and remand with directions.

## BACKGROUND

Tonya and Scott Berndt were divorced by a decree of dissolution on November 30, 2012. The parties have two minor children, Sevanna Berndt, born in 2005, and Tobias Berndt (Toby), born in 2007. The parties entered into a property settlement and custody agreement, which was approved by the court. Pursuant to the custody agreement, the parties had joint legal and physical custody. The parties agreed that the children would primarily reside with Scott. Tonya had parenting time every weekend, except on the third weekend of

each month. The parties alternated holidays, and Tonya was awarded parenting time during the summer break, except for 4 weeks which were awarded to Scott.

On January 25, 2016, Tonya filed a complaint to modify visitation, alleging that since the entry of the decree, there had been a material change in circumstances affecting the best interests of the children. Tonya alleged that the material change in circumstances were that she has a residence in Gordon, Nebraska, and the ability to have regular and continuous contact with the children; the current schedule creates confusion and disagreements between the parties; and the children have expressed a desire to spend more time with her. She sought an order modifying the parenting time to a "week on/week off" schedule, meaning parenting time would alternate between the parties on a weekly basis.

Trial on Tonya's complaint to modify was held on October 18, 2016. The evidence showed that at the time of the divorce, Scott was living on a ranch near Lakeside, Nebraska. The ranch is 36 miles from Gordon. At the time of the hearing on the complaint to modify, Scott continued to live at the ranch with the children and his new wife.

At the time of the divorce, Tonya was awarded the parties' home in Gordon, but she was living in Kimball, Nebraska. She would commute to Gordon for her parenting time. In March 2013, Tonya moved to Gordon and lived in the marital home. In January 2014, she moved to Cheyenne, Wyoming, and subsequently remarried. Since January 2014, Tonya has been commuting from Cheyenne to Gordon for her parenting time. She sold the marital home in Gordon, and she and her husband bought a different home in Gordon. She continues to exercise most of her parenting time in Gordon, but she occasionally takes the children to Cheyenne. Tonya testified that she exercises a large part of her parenting time in Gordon so the children can participate in sports and other activities. Tonya often spends time in Gordon in addition to the time she is there for her scheduled parenting time.

Tonya testified that she and her husband have a "dual residence," and her husband testified likewise. They live in Cheyenne the majority of the time, and both described Cheyenne as their primary residence. Tonya has two older children from another relationship that both live in Cheyenne. At the time of trial, one was in high school and the other had reached the age of majority and was living on her own.

When the decree was entered, Sevanna and Toby were attending a country school located 11 miles from Scott's ranch and 30 miles from Gordon. During the 2013-14 and 2014-15 school years, the children attended school in Lakeside, which then closed at the end of the 2014-15 school year. The children began attending school in Gordon and Rushville, Nebraska, during the 2015-16 school year. They were attending the same school district at the time of trial. Toby's elementary school was located in Gordon, and Sevanna's middle school was located in Rushville. Sevanna would take a bus to school that left from the high school parking lot in Gordon and returned to the same parking lot at the end of the schoolday.

Tonya's home in Gordon is located 1½ blocks from Toby's school and 4 blocks from the high school in Gordon. Tonya testified that during the 2015-16 school year, she spent time in Gordon during the week because she wanted to be close by the children in case they needed a "snack" or a "place to go" after school. She also testified that she was often in Gordon during the week because she was renovating her home.

Tonya testified that Toby has had some issues at school because of his "ethnicity." She stated that the children are "multiracial" and that she feels they "had been a product of some comments that have been said." She testified that she believes it is important that she is there to help the children when they face these issues and it is important that the children are aware of their "full diverse culture."

Sevanna and Toby both participate in various sports and are involved in 4-H. Tonya and Scott both attend the children's sporting events and activities and help the children with their

4-H projects. During the week, Scott gets the children to and from school as well as to their activities. On the weekends, Tonya gets the children to and from their activities. Both parties are also involved in their children's schooling, including helping with homework.

The evidence showed that for the most part, the parties have worked well together regarding the children. They were generally able to communicate about the children's activities and weekend exchanges if there was a conflict. There have been some disputes regarding Scott's parenting time on the third weekend of the month, mostly during times when those weekends fall on a holiday.

Tonya testified that a week on/week off parenting time arrangement would provide stability, be "less back and forth," alleviate frustration in communication, and alleviate disputes over Scott's weekend visitation. She further testified that she would have more bonding time with the children and would be able to participate in their everyday lives. Tonya stated that her parenting time would continue to take place in Gordon.

Scott testified that he was opposed to a week on/week off arrangement, because the children need consistency and he thought it would be detrimental to the children.

Sevanna also testified at trial. She expressed a desire to spend more time with Tonya and stated she would prefer an alternating weekly parenting schedule. She testified that when she is at her father's house during the week, she and her mother send messages back and forth on Facebook almost daily, starting when she gets home after school and continuing throughout the evening. She also testified that there are some issues and problems that she feels more comfortable talking to her mother about. She testified that she loves both parents equally and would like to spend an equal amount of time with them.

The trial court found that Tonya had failed to prove a material change in circumstances occurred which affected the best interests of the children. It noted that at the time of the decree,

Tonya lived in Kimball and was commuting for her parenting time, having it occur in Gordon. At the time of trial, she continued to travel for her parenting time, with the distance from Cheyenne being greater than it was from Kimball. The court found that the only change since the decree was Sevanna's desire to spend more time with Tonya and that this alone did not constitute a material change in circumstances. The court determined that there was insufficient evidence to show a material change in circumstances had occurred which affected the best interests of the children, and it denied Tonya's motion to modify visitation.

## ASSIGNMENTS OF ERROR

Tonya assigns that the trial court erred in (1) failing to find that a material change in circumstances had occurred since the entry of the decree and (2) failing to find that it was in the children's best interests to modify the parenting plan to an alternating weekly schedule.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

## ANALYSIS

[2-5] Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the

child. *Id.* The best interests of the children are primary and paramount considerations in determining and modifying visitation rights. *Id.*

[6] In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins, supra*.

Tonya first assigns that the trial court erred in failing to find that a material change in circumstances had occurred since the entry of the decree. The trial court found that the only change since the decree was Sevanna's desire to spend more time with Tonya.

Sevanna was 11 years old at the time of trial. She testified in court expressing her desire to spend more time with Tonya and stated she would prefer an alternating weekly parenting schedule. She indicated that the amount of time she spends with Tonya is not enough "[b]ecause she like takes good care of us and she's our mom and — you know, yeah." She also testified that there are some issues and problems that she feels more comfortable talking to her mother about. She testified that when she is at her father's house during the week, she and her mother send messages back and forth on Facebook almost daily, starting when she gets home after school and continuing throughout the evening. She testified that an equal amount of time with her parents would be good for her "[b]ecause [she] would get to see both [her] parents equal time and it would work out with like sports and stuff too." Sevanna further indicated that spending equal time was important to her "[b]ecause I love my parents both equally and it's just fun being around them."

[7] While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference

is entitled to consideration. See *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016). Further, in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age. *Id.*

The trial court considered Sevanna's desire to spend more time with Tonya and concluded that her desire alone did not constitute a material change in circumstances. However, the trial court failed to recognize other changes that have occurred since the decree.

When the decree was entered in November 2012, Scott was living near Lakeside and Tonya was living in Kimball and commuting to Gordon for parenting time. The children were attending a country school that was 30 miles from Gordon and 11 miles from Scott's residence.

At the time of the modification trial, Tonya was living in Cheyenne, but also had a different home in Gordon where she was spending a large amount of time. The children were attending school in Gordon and Rushville. Gordon is 36 miles from Scott's residence. Tonya's home in Gordon was within blocks of Toby's elementary school and the high school parking lot from which Sevanna was transported via bus to and from the middle school in Rushville. Tonya was not working, which allowed her to be in Gordon during the week, in addition to when she was there for parenting time. The children were involved in various sports and activities in Gordon, which resulted in them spending a large amount of time in Gordon. It also resulted in a lot of driving back and forth during the week between Gordon and Scott's residence, each way being 36 miles.

We conclude that the change in the children's schools, the location of Tonya's Gordon home and Scott's home in relation to the children's schools, and Tonya's availability during the week, are all changes that have occurred since the decree. When these changes are considered in conjunction with Sevanna's desire to spend more time with Tonya, they result in a material change in circumstances. Accordingly, the

trial court abused its discretion in finding that there was insufficient evidence to show a material change in circumstances had occurred.

[8] Tonya also assigns that the trial court erred in failing to find that it was in the children's best interests to modify the parenting time. The trial court did not address the children's best interests because it found there was no material change in circumstances. However, in our de novo review, we can make a best interests finding if the evidence supports it. See *Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989). We determine that the evidence is sufficient to make a best interests finding in this case.

[9] Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

> [T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member. . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide

physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

The evidence shows that the children have a good relationship with both parents. Both parents are actively involved in the children's homework and their extracurricular activities. The parties are able to communicate about the children's activities and exchanges, and they have generally worked well together regarding the children. As previously discussed, Sevanna wants to spend more time with Tonya. She feels more comfortable talking to her mother about certain topics. She communicates with her mother via Facebook almost daily when she is at her father's house. The week on/week off parenting arrangement will allow Sevanna more time with Tonya and will give her more face-to-face communication. Further, the modified schedule will allow the children to be close to their schools and activities during the weeks that Tonya has them. It also will give the children the opportunity to have both parents involved in their day-to-day activities.

Upon our de novo review, we find that modifying custody to a week on/week off parenting schedule is in the children's best interests.

## CONCLUSION

We conclude that the trial court abused its discretion in finding that there was insufficient evidence to show a material change in circumstances had occurred which affected the best interests of the children. Accordingly, the trial court erred in denying Tonya's complaint to modify visitation. We reverse the trial court's order and remand the cause with directions for the district court to enter a modification order and parenting plan consistent with this opinion.

Reversed and remanded with directions.