IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

SNYDER V. SNYDER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

NYE T. SNYDER, APPELLEE,

V.

LAURA M. SNYDER, APPELLANT.

Filed September 25, 2018.    No. A-17-1048.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

Avis R. Andrews for appellant.

Linsey Moran Brant, of Sidner Law, for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Laura M. Snyder appeals the district court's decree of dissolution of marriage, which awarded physical custody of the parties' three children to Nye T. Snyder and joint legal custody to both parents. Additionally, the court gave Nye tiebreaking power in the event of an impasse regarding any legal decisions, and it ordered Laura to pay $667 per month in child support for the three children. On appeal, Laura assigns error to the district court for awarding Nye physical custody and granting him tiebreaking authority in parenting decisions. She also assigns error to the court's child support calculation, which she argues is inequitable, noncompliant with the Nebraska Child Support Guidelines, and inappropriately high given Laura's extended parenting time. Finding no abuse of discretion, we affirm.

- 1 -

BACKGROUND

The parties were married on April 22, 2006. Three children were born during the parties' marriage: a son in 2007, another son in 2009, and a daughter in 2016. Nye filed a complaint for dissolution of marriage in April 2015, and an amended complaint for dissolution of marriage in May 2016. In his amended complaint, Nye requested sole legal and physical custody of the children or, in the alternative, joint legal and physical custody if sole custody was not awarded to him. Nye additionally requested child support be determined according to the Nebraska Child Support Guidelines.

In May 2015, Laura filed an answer and counterclaim for dissolution of marriage wherein she requested joint legal custody and primary physical custody of the children. Additionally, Laura requested that child support be ordered in accordance with the relevant guidelines. By temporary order in January 2017, the court awarded "temporary joint legal and physical care, custody and control of the minor children of the parties subject to the parenting arrangement currently in effect." That arrangement called for a 50/50 split of parenting time. The court further ordered the parties to attend counseling with the children. No child support was ordered at that time. By order filed later in January, the court additionally ordered the parties to divide equally the costs of all child care incurred on behalf of the children.

A trial was held over the course of 2 days in April and May 2017. At trial, the primary focus of the testimony centered on custody and parenting time. The testimony dealt with the parties' respective dispositions, living environments, and stability. There was also significant testimony regarding the parties' communication, which is generally strained but mostly effective when it comes to especially significant matters. Notably at trial, Laura sought joint physical and legal custody of the children only. Nye continued to seek sole custody.

During the pendency of these proceedings, both parties have been charged with offenses related to their conduct toward each other. Nye acknowledged entering a no contest plea to a charge of second degree trespass related to attempts he made at contacting Laura when she claimed to be at her mother's house. Similarly, Laura acknowledged she had been arrested on a domestic assault charge related to Nye and ultimately pleaded guilty to a charge of disturbing the peace.

The parties have dissimilar parenting styles, particularly regarding disciplining their children. Namely, Nye testified that he utilizes a stern tone of voice whereas Laura raises her voice to yell or scream at the children. Nye acknowledged that he had spanked his sons on one occasion but no longer does so. Additionally, Sharon Hartung, Laura's mother who was called to testify by Nye confirmed that Laura is prone to screaming and yelling at her sons. Hartung testified to one incident in particular when Laura was driving Hartung to her son's home in the winter of 2016 at 4:30 in the morning. While driving, Laura repeatedly yelled for her younger son to retrieve her cell phone until he began crying. She then ordered him to get out of the car and start walking. That incident occurred when he was 7 years old. Laura denied that she yelled incessantly at her children, stating that she utilized three warnings, timeouts, and denial of toys as her primary means of discipline.

Laura testified that she works at First Data in Omaha and lives 10 to 15 miles outside Fremont in a two-bedroom, single-wide mobile home trailer with her father. When the children

are with Laura, the three children share one bedroom while either Laura or her father sleeps on the couch with the other person sleeping in the second bedroom. Meanwhile, Nye lives in Fremont in a two-bedroom duplex with a full, unfinished basement to which he has added large pieces of carpeting that cover the concrete floor. The basement is furnished as the boys' bedroom and includes bunkbeds, dressers, a television, and a gaming system. Nye lives with his girlfriend. Nye testified that he has no intention of leaving Fremont, which is where the children attend school. Although Laura testified that she had considered moving to Omaha, she stated there was a very remote chance of that happening and wanted the children to remain enrolled in school in Fremont regardless of her living situation.

During trial, both parties acknowledged experiencing persistent communication problems in their relationship. Nye noted that during his cohabitation with Laura, they communicated "[n]ot very well; very -- not very well communicating." Moreover, since their separation, Nye noted that most communication is done via text messages, which often leaves matters unresolved or leads to prolonged arguments. Laura confirmed during her testimony that communication issues persist between the parties. Nonetheless, Laura stated her belief that they could co-parent and are generally able to effectively deal with significant matters, especially regarding the children's schooling. However, she also testified that she did not think that their communication would improve following trial. Both parties attend counseling sessions together for their sons, and Nye acknowledged that they generally agree on how to handle the counselor's recommendations. Nye also stated that he and Laura have not experienced the same communication difficulties regarding the appropriate medications for their sons.

In the decree filed on July 20, 2017, the district court awarded to Nye sole physical custody of the parties' three children subject to specific parenting time the court awarded to Laura. Laura was awarded parenting time every other weekend from Friday at 6 p.m. until the following Monday at 9 a.m. or when school begins and every Wednesday from 5:30 p.m. until the following Thursday at 9 a.m. or when school begins. For the months of June and July, the parties are to follow a week on/week off schedule. Additionally, the court awarded the parties joint legal custody of their three children but awarded Nye tiebreaking power in the event of an impasse. Finally, the court also ordered Laura to pay Nye $667 per month as child support for the three minor children.

Laura appeals.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Laura assigns that the district court erred in (1) failing to award the parties joint physical custody of the minor children and awarding physical custody of the minor children to Nye, (2) awarding Nye tiebreaking power in making parental decisions, and (3) failing to correctly calculate child support in compliance with the Nebraska Child Support Guidelines.

## STANDARD OF REVIEW

Appellate courts review dissolution actions de novo on the record to determine whether there was an abuse of discretion by the trial court. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). This standard of review applies to the child custody and child support determinations. *Id.* In reviewing the record de novo, appellate courts must make independent

factual determinations. *Id*. When evidence conflicts, however, appellate courts may consider and give weight to the trial court's findings because the trial court actually heard and observed the witnesses. *Id*.

## ANALYSIS

*Physical Custody.*

Laura argues the district court abused its discretion in awarding physical custody of the children to Nye. Based on our de novo review, we find the district court did not abuse its discretion in its award of custody and thus affirm.

In determining child custody issues, the overriding consideration is the best interests of the children. *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017). In evaluating the children's best interests, courts are directed to consider what parenting arrangement will best provide for children's safety, emotional and physical health, and stability, with an emphasis on continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Reissue 2016).

The standard for determining custody is parental fitness and the child's best interests. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). Nebraska's Parenting Act states that it is in the best interests of the child to have a "safe, stable, and nurturing environment." Neb. Rev. Stat. § 43-2921 (Reissue 2016). To determine the best interests of a child, a court must consider, at a minimum: (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; (3) the general health, welfare, and social behavior of the minor child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. § 43-2923(6). Other pertinent factors a court may consider in determining the best interests of a child include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy education needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Although Nye was awarded physical custody of the children in this case, Laura was awarded parenting time every other weekend from Friday at 6 p.m. until the following Monday at 9 a.m. or when school begins and every Wednesday from 5:30 p.m. until the following Thursday at 9 a.m. or when school begins. Laura was also awarded extended parenting time during the summers, whereby the parties were directed to alternate custody every week during the months of June and July.

Based on our review of the trial record, the award of physical custody and the parenting time arrangement does not constitute an abuse of the district court's discretion. During trial, both parties acknowledged myriad communication issues between them. Evidence was also offered that showed Nye was better able to provide for the children's safety, health, and physical needs. For example, on one occasion Laura was unable to purchase the children's medication while they were

in her care. Nye purchased and delivered the needed medication. There was also trial testimony regarding an incident during which Laura videotaped the children while she was driving her moving vehicle.

There was also ample trial testimony regarding the parties' differing parenting styles. Namely, Nye testified that he utilizes a stern tone of voice whereas Laura raises her voice to yell or scream at the children. This testimony was confirmed by Laura's mother with whom Laura and the children lived for several months while the case was pending. Nye also indicated that he had observed Laura grow more aggressive toward the children in recent years, including her yelling until the boys cried. Additionally, Laura's mother testified to a troubling incident in the winter of 2016 during which Laura repeatedly yelled for her younger son to retrieve her cell phone from within the car until he began crying. Laura then told him to get out of the car and start walking. That incident occurred when he was 7 years old.

The trial record is also replete with evidence that Nye is better able to provide the children with stability, which allows them to continue their current school attendance. Although Laura considered transferring her sons to a different school, she now acknowledges it is best for them to continue attending school in Fremont. Nonetheless, Laura lives 10 to 15 miles outside Fremont and works in Omaha. Nye, on the other hand, lives and works in Fremont, intends to remain in Fremont, and intends for his sons to remain enrolled in their current school. Furthermore, Nye has provided more stable living accommodations for his children. At Nye's home, his sons share a full basement, which is furnished with a large carpet remnant, bunkbeds, dressers, and a television and gaming system. Meanwhile, at Laura's home, all three children share one room while either Laura or her father occupy a second bedroom with the other person sleeping in the living room.

Based on a de novo review of the trial record, we find that the district court's award of physical custody to Nye was not an abuse of discretion.

*Decisionmaking Authority.*

Laura requested and the court awarded the parties joint legal custody of the minor children. However, she complains that the district court abused its discretion in awarding Nye final decisionmaking authority in the event the parties cannot reach consensus regarding necessary decisions that must be made as to health care, education, religion, and residence. We note that pursuant to the parenting plan, Nye may only exercise his "final say" after the parties have had opportunity to discuss and deliberate regarding the issue.

We have previously held that joint legal custody is only appropriate where the parents are able to effectively communicate. *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009). Here, a strong argument can be made that joint legal custody is inappropriate given the parties agreement that they do not communicate well. Laura testified that she did not believe communication would improve in the future. Nonetheless, she testified that she felt joint legal custody was appropriate. Both parties presented evidence of their general inability to communicate productively and their preference to communicate as little as possible. While Nye requested sole legal custody at trial, he has not cross-appealed on that issue.

Based on the record before us, we cannot say that the district court abused its discretion in awarding final decisionmaking authority to Nye. Given the evidence adduced, it is probable that

the parties will not agree on at least some major life decisions for the minor children. Therefore, the evidence supports the district court's decision to grant final decisionmaking authority to one of the parties. Based on the evidence presented at trial, we find that the district court did not abuse its discretion in awarding final decisionmaking authority to Nye.

*Child Support*.

Laura contends the district court abused its discretion in ordering her to pay inequitable child support that both did not account for her extended parenting time and deviated from the guidelines. We find no abuse of discretion by the district court and thus affirm with respect to the child support awarded.

In determining child support, the best interests of the children is again the paramount consideration. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). Child support should generally be set according to the Nebraska Child Support Guidelines, which exist to recognize parents' equal duty to support their children, proportional to their respective incomes. *Gangwish v. Gangwish, supra*. A court may deviate from the guidelines if application of the same would be unjust or inappropriate in an individual case. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). If a court deviates from the guidelines, it must specifically find that such deviation is warranted by the evidence. *Id*.

The district court calculated child support utilizing only worksheet 1 of the guidelines. This calculation showed that Laura would owe child support of $835 per month for three children, $725 per month for two children, and $497 per month for one child. The district court then specifically found "that a deviation from said child support obligation shall be allowed since [Laura] has extended parenting time with the children, and, as such, shall be granted an abatement from the child support amount called for in the Guidelines." A deviation from the assessed child support is precisely the relief Laura now seeks. Instead of the amounts calculated pursuant to the guidelines, the district court applied a roughly 20-percent reduction and ordered Laura to pay child support of $667 per month for three children, $576 per month for two children, and $388 per month for one child. Thus, the district court accounted for Laura's extending parenting time in determining the proper amount of her child support obligation.

We cannot say, based on a de novo review of the record, that the district court abused its discretion in determining child support. While the district court in its discretion could have performed a joint custody calculation based on Laura receiving between 109 and 142 days of parenting time per year under § 4-212 of the guidelines, it was not obligated to do so. The district court instead deviated from the guidelines by lowering Laura's monthly child support obligation that would have been called for under the basic calculation attached to the decree. In so doing, the court found that Laura was entitled to an abatement given the extended parenting time awarded to her. We note that the worksheet 1 calculation would have required Laura to pay $835 per month. Therefore, the district court's reduction to $667 per month adequately accounted for Laura's extended parenting time and did not constitute an abuse of discretion.

CONCLUSION

Upon our de novo review of the record, we find the district court did not abuse its discretion in awarding Nye sole physical custody of the children and awarding the parties joint legal custody, with Nye holding final decisionmaking ability in the event of an impasse. Likewise, we find the district court did not abuse its discretion in its award of child support to be paid by Laura.

AFFIRMED.