IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE ON BEHALF OF GALLEGOS V. GALLEGOS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE ON BEHALF OF ZAVIER GALLEGOS AND ZAIDEN GALLEGOS,
MINOR CHILDREN, APPELLEE,

V.

DANIEL V. GALLEGOS, JR., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE,
AND COURTNEY L. ZAMARRIPA, THIRD-PARTY DEFENDANT, APPELLANT.

Filed September 15, 2020.    No. A-20-056.

Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

Lindsay R. Lookabill, of Douglas, Kelly, Ostdiek, Snyder, Ossian, Vogl & Lookabill, P.C., for appellant.

William C. Peters, Jr., for appellee Daniel V. Gallegos, Jr.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

The Scotts Bluff County District Court awarded sole physical custody of Zavier Gallegos and Zaiden Gallegos to their mother, Courtney L. Zamarripa. The children's father, Daniel V. Gallegos, Jr., was awarded regular parenting time every other weekend from Thursday morning at 8 a.m. until Monday morning at 8 a.m. However, in the summer months, Daniel was awarded alternating weeks of parenting time, with exchanges to occur on Mondays at 8 a.m. Courtney and Daniel were awarded joint legal custody of the children. On appeal, Courtney challenges only the amount of summer parenting time awarded to Daniel. We affirm.

- 1 -

BACKGROUND

Courtney and Daniel are the parents of Zavier, born in 2011, and Zaiden, born in 2015. Courtney and Daniel, who were never married, ended their relationship in April 2018.

In October 2018, the State, on behalf of Zavier and Zaiden, filed a complaint to establish Daniel's child support obligation. In November, Daniel filed an answer and cross-complaint. In his cross-complaint against Courtney, Daniel sought joint temporary and permanent legal and physical custody of the children. In December, Courtney filed a motion for temporary orders, asking the district court to award her sole legal and physical custody of the children, subject to parenting time for Daniel.

On January 9, 2019, the district court entered its journal entry on the temporary motions. The court found that since the parties' separation in April 2018, the children had primarily resided with Courtney, but Daniel had parenting time as arranged by the parties. The court stated that the relationship between the parties continued to deteriorate after separation and a protection order was filed and granted ex-parte against Daniel for the benefit of Courtney and the minor children, and Daniel had been charged with allegedly violating that protection order. According to the court, the affidavit evidence presented showed that both parties were actively involved in the lives of the children. The court stated, "Each party takes the opportunity to present what they feel are problems or shortcomings of the other parent rather than focus on what is best for the children," but "[t]he children need time and attention from both parents on a regular and consistent basis and this is what they were accustomed to prior to separation." The court awarded the parties joint legal custody of the children, with Courtney having physical custody. Daniel was granted parenting time on alternating weeks beginning on Thursday morning at 8 a.m. and ending on Monday morning at 8 a.m., and a holiday parenting time schedule was also established. The court said it was not awarding specific summer parenting time "at this time," but in the event the parties had not resolved their pending matter prior to May 1, 2019, the parties could petition the court for further summer parenting time orders. The court also ordered Daniel to pay temporary child support of $600 per month for the two children.

On August 19, 2019, Courtney filed her answer and counterclaim. In her counterclaim, Courtney sought sole legal and physical custody of the children, subject to parenting time for Daniel.

Trial was held on October 21, 2019. Daniel acknowledged that he was the father of Zavier and Zaiden. Daniel testified that he would like "50/50 custody," and that continued parenting time as set forth in the temporary order would not be acceptable. He said, "My two boys are still having a really hard time adjusting to it." During Daniel's parenting time, they do whatever the boys want to do, "[w]e go either fishing[,] go to the park, play[] football, whatever they want to do to have a good time." Daniel was living with his parents, and if he had to work during his parenting time, his mother watched the children.

Daniel's mother testified that Zavier and Zaiden love Daniel and they "constantly" follow him. She said Daniel is involved in the boys' extracurricular activities, such as Zavier's baseball. Daniel's aunt testified that "Daniel makes sure that [the boys are] taken care of" during his parenting time; he cooks for them, gets them to and from school, they are always clean, and he spends a lot of time with them.

Courtney testified that she had a good relationship with Zavier and Zaiden, and she tried to do things that they were interested in, like watching football and going to the zoo. She said Daniel only started showing an interest in parenting the boys "[a]fter we started going to Court."

Courtney's mother, Christine Zamarripa, testified that Courtney had "a really good relationship with the boys," and she was "very loving and very attentive." Courtney provided rules, expected the boys to respect other people, and disciplined them when they were misbehaving.

Courtney claimed that during her relationship with Daniel, he was "very degrading, manipulative, [and] controlling," he "would tell [her] nobody like[d] [her], no one would ever want [her], he didn't respect [her] and he never will." He also called her "lazy, ugly, fat." Daniel said those things in front of the children, and Zavier would sometimes repeat what he heard Daniel say. At the time of trial, Courtney wanted the district court to award joint legal custody, but she wanted sole physical custody of the children.

Christine said that Daniel had been "very disrespectful with the things he would say sometimes or things he'd say in front of the boys." On one occasion when Courtney and Daniel were in a relationship, Christine observed Daniel get "very angry" with Courtney and he "started cussing at her and yelling at her." When Christine asked him to stop talking to her daughter like that because the boys were there, Daniel "came within inches of [Christine's] face, started screaming and yelling at [her], telling [her] to get the fuck out of his house and that he would do whatever the fuck he wanted in his house." Christine told Daniel to calm down or she would call the police, and he "grabbed the phone" and threw it across the room. On another occasion, Christine witnessed Daniel "screaming and yelling" when Courtney brought home groceries; he told Courtney "fat ass [sic] going to eat everything, and that she didn't need to buy that much stuff." Christine said that same day Daniel "wanted to fight" Courtney's father, and when they went outside, Daniel "pushed [him] against the truck and started fighting him"; Courtney and her mother tried to break it up, and Courtney had to call Daniel's parents to come help with the situation. During her testimony, Courtney said the fight occurred in April 2018 and the boys were inside the house at the time.

Courtney testified that in October 2018, Daniel called her at 2 a.m., but she did not answer because she was sleeping. She then heard a car pull in the driveway and "someone started banging on the doors and the windows, ringing the doorbell." The boys were home at the time. When Courtney answered the door, Daniel "barged in, and he was yelling and screaming at me saying that I had slept with his cousin and accused me of being pregnant by him and said that he didn't think the boys were his and wanted a paternity test." Courtney asked Daniel to leave multiple times. Courtney's 7-year-old niece, who was spending the night, woke up and ran to the neighbor's house. Later the police arrived, but Daniel was not arrested that night. However, an exhibit received into evidence reveals that after the neighbor called the police, Daniel was cited for, and later charged with, disturbing the peace; he later pled no contest and received a fine.

According to Courtney, in November 2018, Daniel had parenting time with the boys after school and was supposed to return them at 8 p.m. While the boys were with him, Daniel called and texted Courtney approximately 60 times in a 3-hour period. When Daniel brought the boys back to her, he "barged his way in and was yelling, screaming at [her] in front of the boys" and wanted to get some of his things. Courtney asked him multiple times to leave so that the boys could get to bed, but he "made his way to the bedroom and whispered in Zavier's ear, 'Remember what I told

you.'" Courtney said that was the incident that ultimately led to her getting a protection order. Courtney said there had been multiple violations of the protection order.

Exhibits received into evidence reveal that Courtney obtained a protection order for herself and the children against Daniel in November 2018; the protection order was to remain in effect for 1 year. In December 2018, he was charged with five misdemeanor counts of violating the protection order and two misdemeanor counts of disturbing the peace; in March 2019, he ultimately pled no contest to three counts of violating the protection order (15 days' jail time each, consecutive) and one count of disturbing the peace ($500 fine). In March he was again charged with one misdemeanor count of violating the protection order; he later pled no contest to an amended charge of disturbing the peace and was fined $250. In July, Daniel was charged with one felony count of violating the protection order, second offense (according to the affidavit for arrest warrant, Daniel was communicating with Zavier through Xbox outside of his parenting time).

Daniel acknowledged that in October 2017, there was an incident where he excessively disciplined Zavier, leaving marks on Zavier's body. Daniel also acknowledged that in October 2018, he was charged with disturbing the peace after he showed up at Courtney's house in the middle of the night. He also admitted that during the pendency of the custody case he had been convicted of violating the protection order against him and that he spent 45 days in jail, and that he also had a pending felony charge against him for violating the protection order. However, Daniel testified that it was hard when he did not have his children and that he "didn't have really a criminal record until they got [taken] away" from him. And while he took some inappropriate action, he was dealing with that and would comply "100 percent" with whatever the district court ordered.

Christine noticed changes in Zavier's behavior off-and-on during the pendency of the case, but "[i]t got really bad after Daniel was released from jail." Christine said, "Zavier became aggressive with his little brother," "[h]e was disrespectful, and "[h]e would mouth off" and not listen. According to Christine, exhibit 17, a video recording of Zavier in July 2019, was indicative of his behaviors; she said the video was taken after they left a baseball game, Daniel had been at the game and it was shortly after he got out of jail. In the video, Zavier can be seen hitting his elbows on the seat and heard repeatedly saying "I want my dad," "I hate my mom," "I hate my grandma"; he would not stop when asked. Christine said that Zavier had no behavior issues when Daniel was in jail. And Courtney said that while Daniel was in jail, Zavier was respectful and followed the rules.

Christine testified that Zavier "would say naughty words sometimes, or he would be upset with us about things that he had heard from his dad," "[l]ike his dad told him that we don't treat him right, that we get his dad in trouble all the time, that we lied to him, and that he should only trust his dad." During Daniel's testimony, he was asked how he talks about Courtney to Zavier, and Daniel replied, "I talk good. If he wants to call his mother, I let him." Daniel denied ever telling Zavier that Daniel was the only one that Zavier can trust, that Courtney was a liar, or that it was Courtney's fault that Zavier cannot see Daniel.

Courtney agreed that it was important for Daniel to continue to have a relationship with the children. She proposed that Daniel have parenting time every other weekend from after school on Friday to Monday mornings; she believed it was "stressful" for Zavier to switch in the middle

- 4 -

of the school week and it was disruptive to their school routine. She also proposed "[t]wo unconsecutive [sic] weeks" of summer parenting time.

The district court entered its order on November 15, 2019. The court found that both parents spend quality time with their children during their respective parenting time, and each party's respective witnesses testified the parties were involved parents who interacted with the children in appropriate and loving ways. The court stated that the parties' relationship is "tumultuous at best." It noted that a protection order was issued against Daniel after the parties separated, and there were criminal charges of protection order violations. The court found there was evidence that Daniel was "controlling and abusive" toward Courtney during their relationship, and that he engaged in that behavior in front of Courtney's family and the children. There was also evidence that Daniel "used excessive discipline" on Zavier. And since the separation there had been a change in Zavier's behavior, as shown in exhibit 17. "This behavior is concerning to the Court as well as [Daniel's] treatment of [Courtney] in front of the children." The court stated, "The best interests of the children require a household and environment where they are encouraged to have a loving and healthy relationship with both parents. [Daniel] has exhibited behaviors which call his ability to provide this environment into question."

The district court found that the temporary parenting time schedule had been working for the children and that it was "in the children's best interest to continue." The court awarded the parties joint legal custody of the children, with Courtney having physical custody. It again awarded Daniel parenting time on alternating weeks beginning on Thursday morning at 8 a.m. and ending on Monday morning at 8 a.m., and a holiday parenting time schedule was established. However, this time the court also awarded Daniel alternating weeks of parenting time in the summer months, with exchanges to occur on Mondays at 8 a.m. Daniel's monthly child support obligation remained at $600 per month for the two children. Daniel's motion for new trial, based in part on the district court's decision to not award him approximately equal parenting time, was overruled.

Courtney now appeals.

## ASSIGNMENT OF ERROR

Summarized, Courtney assigns that the district court erred in awarding Daniel equal summer parenting time after making a specific determination that the prior parenting plan was in the best interests of the children.

## STANDARD OF REVIEW

Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *Bornhorst v. Bornhorst*, 28 Neb. App. 182, 941 N.W.2d 769 (2020).

## ANALYSIS

Courtney's argument on appeal relates solely to the district court's decision to order the alternating weeks of summer parenting time. She does not complain about the court's determination that maintaining the parenting time as set forth in the temporary order was in the best interests of the minor children. However, she goes on to argue that "with no explanation," the

court added "a summer parenting plan that is the equivalent of a joint custodial arrangement," which "is indefensible" and an abuse of discretion. Brief for appellant at 10. She argues that the evidence at trial raised concerns about Daniel's "ability to support the emotional growth and stability as well as the safety of the minor children." *Id*. at 11. And to

> subject the minor children to the equivalent of a joint custodial parenting plan for a substantial portion of the year is to knowingly put them into an environment for extended periods of time where they will be subjected to [Daniel's] questionable, concerning, abusive, and controlling behaviors and where they will not be encouraged to have a positive relationship with [Courtney].

*Id*. at 11-12. Courtney contends the "every-other-weekend parenting time" schedule for Daniel should "continue year-round." *Id*. at 12.

We note that while Courtney refers to Daniel's abusive and controlling behaviors, she does not specifically assign error to or otherwise argue about whether Neb. Rev. Stat. § 43-2932 (Reissue 2016) should have been applied by the district court. Under that statute, if a court finds evidence of child abuse or domestic intimate partner abuse by a preponderance of the evidence, then the court shall not order legal or physical custody to an abusive parent without making special written findings that the child and other parent can be adequately protected from harm. However, such additional written findings are not necessary if a trial court determines there was no domestic abuse as defined by Nebraska's Parenting Act. See *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019) (husband's one-time slap of wife and punching holes in basement wall did not trigger application of § 43-2932; pattern or history of abuse not established by evidence). Since the application of § 43-2932 was not specifically assigned as error by Courtney, we have considered the matter under a plain error review and find no such error. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014) (plain error is error plainly evident from record and of such nature that to leave it uncorrected would result in damage to integrity, reputation, or fairness of judicial process). We therefore move on to consider Courtney's assigned error under general child custody and parenting time principles.

When deciding custody issues, the court's paramount concern is the child's best interests. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). The best interests inquiry has its foundation in both statutory and case law. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

> [T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member. . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

- 6 -

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

While the evidence establishes that Courtney and Daniel love their children, the record does reveal a contentious relationship between these parents as we have already detailed. However, despite such contentions, Courtney herself agreed that it was important for Daniel to continue to have a relationship with the children. However, as to Daniel's alternating weeks of summer parenting time, Courtney expresses concern about Daniel not fostering an emotionally healthy environment for the children, as alluded to by the district court, during what she characterizes as "the equivalent of a joint custodial arrangement." Brief for appellant at 10. It is true that the district court expressed concern about Daniel's disrespectful behavior towards Courtney in front of the children, and also indicated that the "best interests of the children require a household and environment where they are encouraged to have a loving and healthy relationship with both parents." The court also found that Daniel "exhibited behaviors which call his ability to provide this environment into question." Notably, after setting forth such findings, the court awarded Courtney physical custody of the children.

Although the district court did express concerns about Daniel's disrespectful behaviors, it nevertheless found that it was in the children's best interests to continue with the same parenting time schedule that had been in place since the temporary order; such order awarded Daniel regular parenting time every other weekend. However, at the time of the temporary order, the court specifically indicated it was not awarding summer parenting time, and if the parties could not resolve that issue, they could make a further request. Since the parties had not resolved the summer parenting time issue by the time of trial, it was appropriate for the court to include summer parenting time in its final order. In this case, rather than award Daniel a 6-week or 8-week block of summer parenting time as often seen in parenting plans for noncustodial parents, the court opted for an alternating-week schedule.

The district court clearly took into consideration that Daniel had engaged in past behaviors that caused the court concern; however, it is also evident the court did not find such past behaviors to necessarily be indicative of how Daniel will parent moving forward. And to the extent Daniel ignores what this court views as cautionary language contained in the district court's order, and instead continues to engage in disrespectful or alienating behaviors that adversely influence the children, such matters can be addressed in subsequent proceedings. The district court's decision reflects its hope that Daniel has the ability to parent his children in a positive manner henceforth, including, for the sake of the healthy development of the children, demonstrating respect for the children's mother and other relatives.

We cannot say that awarding the parents equal summer parenting time constitutes an abuse of discretion based on the evidence presented here.

### CONCLUSION

For the reasons stated above, we affirm the order of the district court.

AFFIRMED.